

**ORDERED in the Southern District of Florida on June 23, 2016.**

**Erik P. Kimball, Judge**
**United States Bankruptcy Court**

---

### UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF FLORIDA
### WEST PALM BEACH DIVISION

In re:                                                   Case No. 14-20731-EPK

MARTIN A. TABOR and                       Chapter 7
ABBY TABOR,

      Debtors.
_____/

HEARTWOOD 4, LLC and
DEBORAH C. MENOTTE,
Chapter 7 Trustee,

      Plaintiffs,
vs.
                                                         Adv. No. 15-01616-EPK
MARTIN A. TABOR and
ABBY TABOR,

      Defendants.
_____/

### <u>ORDER GRANTING IN PART MOTION TO AMEND COMPLAINT</u>

THIS MATTER came before the Court for hearing on June 1, 2016 upon the *Motion*

*for Leave to File First Amended and Supplemental Complaint* [ECF No. 155] (the "Motion")

filed under seal by Heartwood 4, LLC and Deborah C. Menotte, Chapter 7 Trustee (the "Trustee," and together with Heartwood 4, LLC, the "Plaintiffs"). In the Motion, the Plaintiffs request leave of Court to file an amendment to *Heartwood 4, LLC's and Deborah C. Menotte's Complaint Objecting to Debtors' Discharge and Objecting to a Claimed Exemption* [ECF No. 1] (the "Original Complaint"). The Plaintiffs filed the *First Amended and Supplemental Complaint Objecting to Discharge* (the "Amended Complaint"), their proposed amendment to the Original Complaint, as an attachment to the Motion. Martin A. Tabor and Abby Tabor (the "Debtors") filed a response to the Motion and appeared at the hearing in opposition thereto. For the reasons stated more fully below, the Court now grants the Motion in part and denies it in part.

**Background**

The Plaintiffs filed the Original Complaint on September 10, 2015. The deadline to object to the Debtors' discharge under Fed. R. Bankr. P. 4004(a) expired one week later, on September 17, 2015.

In the Original Complaint, the Plaintiffs state that Mr. Tabor is a sophisticated businessman with many years of experience in the real estate brokerage and development industries, and that Mrs. Tabor "is, and has historically been, a stay-at-home wife." Prior to filing their bankruptcy petition, the Debtors guaranteed large loans to various entities, including a nearly $10 million loan made by Mercantil Bank. The borrowers defaulted on the loans, leaving the Debtors obligated on tens of millions of dollars in commercial loans.

Most of the Original Complaint concerns actions allegedly taken by Mr. Tabor through various entities he owns and/or controls. The Plaintiffs allege, generally, that Mr. Tabor used these entities as personal piggy banks and to hide assets from creditors and the Trustee.

For instance, Martin Tabor & Associates, Inc. ("MTA") is a real estate brokerage company wholly owned and controlled by Mr. Tabor.  It is not disputed that Mr. Tabor traded in a luxury vehicle owned by MTA for a value of $12,021.22, which sum Mr. Tabor applied to a lease on a new Porsche.  Mr. Tabor personally executed the lease on the Porsche jointly with the Tabor Agency, Inc. ("Tabor Agency"), an allegedly defunct entity owned by Mr. Tabor's mother.  Shortly after executing the lease, Mr. Tabor filed the bankruptcy petition here, and failed to disclose the Porsche as an asset.  The Plaintiffs allege in the Original Complaint that, for many months during this bankruptcy case, while Mr. Tabor was attempting to deceive the Trustee and creditors regarding the existence and ownership of the Porsche, the Debtors advanced exempt funds to the Tabor Agency through MTA, which funds the Tabor Agency used to make lease payments on the Porsche.  The Plaintiffs allege that the Porsche was but one of several ways the Debtors used MTA and the Tabor Agency to divert funds that would otherwise be available for distribution to their creditors.

In addition, the Plaintiffs allege in the Original Complaint that Mr. Tabor was able to "suggest" means by which the Port Mayaca Family Trust (the "Trust") might divert funds for Mr. Tabor's personal and business purposes.  It is not disputed that Mr. Tabor settled the Trust in 2005, naming his children and sister as beneficiaries.  Some years later, the Trust purchased a home, which it later sold.  The Plaintiffs allege that part of the commission on the sale of the property was due to Mr. Tabor personally or via MTA, his brokerage firm, but that Mr. Tabor "diverted the commission" from the sale of the property to the Tabor Agency (again, an entity owned by his mother) in order to conceal the funds from the Debtors' creditors.

In another instance recounted in the Original Complaint, the Plaintiffs allege that the Debtors personally loaned their son $1.75 million, which loan was secured with a

mortgage on the son's home.  The Plaintiffs allege that the Trust then loaned $1 million to Vero 95, LLC ("Vero 95"), an "affiliate" of Mr. Tabor.  The Plaintiffs allege that Mr. Tabor then assigned the mortgage on the son's home, a personal asset of the Debtors, to the Trust as security for the loan from the Trust to Vero 95.[1]  The Plaintiffs further allege that when the Debtors' son repaid a portion of the loan with proceeds from sale of the home, those proceeds were tendered to the Trust in satisfaction of the loan obligations of Vero 95.  The Plaintiffs suggest that Mr. Tabor alone caused the entities involved to undertake these transactions in order to transfer a large asset, the repayment obligation from the Debtors' son, into an entity that would shield it from the Debtors' creditors and the Trustee.

The Original Complaint contains many other, similar allegations.  For instance, the Plaintiffs allege that Mrs. Tabor purposefully encumbered her own vehicle in order "to extract equity from the vehicle and insulate it from her creditors."  The Plaintiffs also allege that the Debtors disposed of many hundreds of thousands of dollars in jewelry and household furnishings prior to filing their bankruptcy petition, and did not keep adequate records of such assets or the sales.  The Plaintiffs allege several instances in which the Debtors lied under oath and made false statements concerning their income and assets, such as the jewelry and the Porsche.

In the months following the filing of the Original Complaint, the parties conducted significant discovery and litigated a number of pre-trial motions, including the *Debtors' Motion for Summary Judgment on Counts I & VII* [ECF No. 128] (the "Summary Judgment Motion"), which remains outstanding.  Most notably, the Plaintiffs' discovery revealed

---

[1] It is not clear how Mr. Tabor, by himself, caused the transfer of an asset that the Original Complaint describes as an asset owned by Mr. Tabor and Mrs. Tabor jointly, but that is how the Original Complaint reads.

potentially inappropriate conduct undertaken by Mr. Tabor through yet another entity, Port Mayaca Plantation, LLC ("PMP").

The Trustee had been previously aware that Mr. Tabor owned a significant minority interest in PMP and served as its manager. The Trustee was aware that PMP was litigating with Mercantil Bank concerning one of the loans Mr. Tabor had guaranteed. Among other things, PMP had pursued counterclaims for breach of contract and lender liability against Mercantil Bank that were allegedly worth more than $10 million. If PMP was successful on such counterclaims, there might have been a significant distribution payable to Mr. Tabor and thus to the Trustee on behalf of his bankruptcy estate. Through discovery, the Plaintiffs learned that, on November 20, 2015, PMP reached a confidential settlement with Mercantil Bank that involved PMP releasing any and all claims against Mercantil Bank and thus eliminating the possibility of any distribution to the Trustee on account of PMP's counterclaims. Another component of that settlement is a release of personal guaranties of the Debtors on the defaulted $10 million loan.

The Trustee immediately moved to compel turnover of the settlement document, which the Debtors resisted. On January 13, 2016, the Court granted the Trustee's motion, requiring the Debtors to produce the settlement agreement to the Plaintiffs subject to certain confidentiality provisions. *See* ECF No. 236 in Case No. 14-20731. For several months thereafter, the Trustee conducted extensive discovery into the settlement and related issues affecting the bankruptcy estate. *See, e.g.*, ECF No. 369 in Case No. 14-20731 (incorporating comments on record at hearing on June 1, 2016 concerning PMP's attempt to purchase an asset of the estate).

On May 12, 2016, the Plaintiffs filed the Motion and the Amended Complaint. The Plaintiffs argue that Counts I-VI and VIII, discussed further below, contain requests for relief premised upon facts substantially similar to those presented the Original Complaint,

as recounted above.  The Plaintiffs also now propose to allege, in Count VII of the Amended

Complaint, that Mr. Tabor knowingly and fraudulently caused PMP to negotiate the

settlement with Mercantil Bank that included terms personally benefitting the Debtors, yet

resulted in the release of significant claims that could have benefitted the estate, in

violation of section 727(a)(4)(C) of the Bankruptcy Code.[2]

The Amended Complaint includes some facts not alleged in the Original Complaint.

The Amended Complaint contains additional details concerning the partial re-payment of

the loan to the Debtors' son, the Trust, and the Tabor Agency, as well as facts surrounding

Mr. Tabor's involvement with each.  For instance, the Amended Complaint contains

numerous specific allegations to the effect that, after Mr. Tabor caused the Trust to receive

the funds from partial repayment of the loan to the Debtors' son, the Trust repaid personal

loans on behalf of the Debtors, effectively subsidizing the Debtors' lifestyle.  Likewise, the

Amended Complaint contains specific allegations that Mr. Tabor is directing funds to the

Tabor Agency to be used for his personal benefit, despite his having no formal ownership

interest in the Tabor Agency.  The Plaintiffs point to these additional details to support

their allegation that the proceeds from the repayment of the loan to the Debtors' son, the

Trust, and the Tabor Agency, constitute "equitable interests" held by Mr. and Mrs. Tabor.

**Analysis**

Fed. R. Civ. P. 15, made applicable to this adversary proceeding by Fed. R. Bankr. P.

7015, provides that parties may amend pleadings at will within certain time constraints or,

upon expiration of such constraints, "by the court's leave."  Where the amended pleading

would otherwise be untimely, "[a]n amendment to a pleading relates back to the date of the

original pleading" under certain circumstances.  Absent "relation back," the Amended

---

[2] 11 U.S.C. §§ 101 *et seq.*

Complaint would be untimely in this instance because the deadline for the Plaintiffs to object to the Debtors' discharge expired many months prior to the filing of the Motion and the Amended Complaint.

The Plaintiffs argue that the underlying factual allegations in the Amended Complaint "relate back" to the Original Complaint. An amendment relates back to an original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B), made applicable to this adversary proceeding by Fed. R. Bankr. P. 7015. "[T]he critical issue in Rule 15(c) determinations is whether the original complaint gave notice to the defendant of the claim now being asserted." *Makro Capital of Am., Inc. v. UBS AG*, 543 F.3d 1254, 1260 (11th Cir. 2008) (citations omitted).

The Plaintiffs further argue that the factual allegations contained in Count VII of the Amended Complaint do not relate back, but are nevertheless permissible as amendments under applicable rules of procedure.  In the Motion and at the hearing, the Plaintiffs argued that the amended Count VII should be permitted under Fed. R. Civ. P. 15(d), which states that "the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented."  The Plaintiffs argued that certain facts pled in the Amended Complaint arise from transactions that post-date the filing of the Original Complaint.  Alternatively, the Plaintiffs argued that the count should be permitted under Fed. R. Bankr. 4004(b), which provides for addition of nondischargeability claims after the expiration of the Rule 4004(a) deadline under certain conditions discussed in more detail below.

The Court's analysis of the Amended Complaint requires a determination of whether or not each count contained therein arises out of "conduct, transaction[s], or occurrence[s]"

that were either set out in the Original Complaint or that occurred after the Original

Complaint was filed and otherwise satisfy the provisions of applicable rules.

**Count I**

In Count I of the Amended Complaint, the Plaintiffs request denial of Mr. Tabor's

discharge pursuant to section 727(a)(2)(A).  The Plaintiffs allege that Mr. Tabor concealed

various assets from creditors prior to the filing of the bankruptcy petition.  The alleged

assets include the above-mentioned Porsche, as well as "equitable interests" in the proceeds

from repayment of the loan to the Debtors' son, the Trust, and the Tabor Agency.  The

Debtors argue that the "equitable interest" theory and certain related facts do not relate

back to the Original Complaint.

It is not relevant whether the Original Complaint contains the phrase "equitable

interest," or a request for relief under any such theory, or even a request for relief based on

exactly the facts that support the theory presented on the Amended Complaint.  In order to

meet their burden in the Motion, the Plaintiffs must show that the facts necessary to

support the claims contained in the Amended Complaint were alleged in the Original

Complaint in such a way as to give notice that such claims might be pled, and that facts

alleged for the first time in the Amended Complaint relate to the same conduct,

transactions, or occurrences as those alleged in the Original Complaint.

In the Eleventh Circuit and under the Bankruptcy Code, "equitable interests" as

held by the bankruptcy estate are construed broadly.  *See* 11 U.S.C. § 541 (defining

property of the estate); *In re Coady*, 588 F.3d 1312, 1316 (11th Cir. 2009).  Equitable

interests may include interests in property that arise when a debtor retains control and/or

benefit of an asset without possessing formal title to the asset.  Accordingly, in order to give

the Debtors notice that claims might be pled in connection with Mr. Tabor's alleged

concealment of equitable interests in the Trust, the proceeds from repayment of the loan to

8

the Debtors' son, and the Tabor Agency, the Plaintiffs would have to allege facts sufficient to show that (1) Mr. Tabor controlled or reaped an equitable benefit from those assets, (2) Mr. Tabor did not have legal title to the assets, and (3) Mr. Tabor concealed his interest in the assets prior to the petition date.

In the Original Complaint, the Plaintiffs allege that Mr. Tabor caused several entities to undertake various transactions that personally benefitted the Debtors.  One of those allegations was that Mr. Tabor diverted a commission from sale of Trust property through the Tabor Agency in order to hide the funds from creditors and the Trustee. Another was that Mr. Tabor caused the Trust to receive the proceeds from repayment of a loan through a complicated series of transfers that enabled him to inappropriately protect such proceeds from his creditors.[3]  Yet another was that Mr. Tabor caused his own money to flow through the Tabor Agency in order to hide from the Trustee his payments on the lease of a luxury car leased shortly prior to filing for bankruptcy protection.

All of the claims in the Amended Complaint regarding "equitable interests" in the Trust, the proceeds from repayment of the loan to the Debtors' son, and the Tabor Agency relate to the same core body of conduct, i.e., the allegations that Mr. Tabor exercised control over property that he did not own in order to obtain personal benefit.  Any defendant, upon reading the Original Complaint, was effectively notified that claims might be pled with regard to Mr. Tabor's employment of the Trust, the Tabor Agency, and loan repayment proceeds to conceal assets from the Trustee.

While the Amended Complaint contains some new factual allegations, those new allegations merely expand upon the core allegations related above.  For instance, the

---

[3] Interestingly, this incident does not appear crucial to any request for relief in the Original Complaint.  It may be inferred that the Plaintiffs included references to the repayment of the loan made to the Debtors' son in the Original Complaint solely to show that Mr. Tabor controlled the Trust and used it inappropriately, as with his other entities, for the Debtors' personal benefit.

Amended Complaint contains additional allegations showing the methods by which the Debtors caused the Trust to disburse the proceeds from repayment of the loan to subsidize their own lifestyle, without regard to the wishes of the actual trustee of the Trust or the beneficiaries of the Trust.[4]  Likewise, the Amended Complaint contains additional allegations of transactions by which Mr. Tabor caused money to flow through the Tabor Agency in order to evade his creditors.  These new allegations logically follow from those articulated in the Original Complaint, and concern the same general conduct.

Accordingly, the Court will grant the Motion to the extent that the Plaintiffs will be permitted to file an amended complaint containing the amended Count I.

**Count II**

In Count II of the Amended Complaint, the Plaintiffs request denial of Mrs. Tabor's discharge pursuant to section 727(a)(2)(A).  Pursuant to the request, the Plaintiffs allege that Mrs. Tabor concealed various assets from the Trustee.  The assets at issue are Mrs. Tabor's personal vehicle and equitable interests in the Trust and proceeds from the loan to the Debtors' son.

In the Original Complaint, the Plaintiffs allege that Mrs. Tabor encumbered her vehicle in order to extract equity and insulate the vehicle from creditors.  This portion of amended Count II is substantially similar to Count I of the Original Complaint in all factual and legal respects.  Accordingly, the Court will grant the Motion to the extent that the Plaintiffs will be permitted to file an amended complaint containing the portion of amended Count II as regards the vehicle.

---

[4] Crucially, the Amended Complaint alleges that Mrs. Tabor shares responsibility for such conduct. While the new allegations against Mrs. Tabor relate to information contained in the Original Complaint, it does not appear that the earlier complaint contained sufficient information to alert Mrs. Tabor of impending claims.  This distinction is discussed in greater detail with respect to the amended Counts II and IV.

However, the Original Complaint does not even suggest that Mrs. Tabor ever caused the Trust to undertake any action or conspired with Mr. Tabor to do so.  Nothing in the Original Complaint would lead the reader to conclude that Mrs. Tabor received any personal benefit from Mr. Tabor's control of the Trust or the proceeds from repayment of the loan.  In the Original Complaint, Mr. Tabor is described as the mastermind of the effort to shield assets from creditors and the Trustee.  By contrast, the Original Complaint describes Mrs. Tabor solely as "a stay-at-home-wife," and mentions her conduct only in connection with the vehicle and the fact that the Debtors made a loan to their son.[5]

From the Original Complaint, it appears that Mrs. Tabor's only role in the sequence of events later alleged in the Amended Complaint was to join in a loan to her son in 2006.  This allegation is not sufficient to provide Mrs. Tabor with notice of a potential claim related to any equitable interest in the Trust or the proceeds from repayment of that loan.  These allegations in the amended Count II do not relate back to those contained in the Original Complaint.  This portion of Count II of the Amended Complaint is thus time-barred.  The Motion will be denied in part; the amended complaint may not include a request for relief against Mrs. Tabor premised upon an equitable interest in the Trust or the proceeds from repayment of the loan made to the Debtors' son.

**Count III**

In Count III of the Amended Complaint, the Plaintiffs request denial of Mr. Tabor's discharge pursuant to section 727(a)(2)(B).  The Plaintiffs allege that Mr. Tabor concealed

---

[5] Because Mrs. Tabor allegedly joined in the loan to the Debtors' son, one might infer that she would also need to join in the assignment of the loan to the Trust for that assignment to be legally effective.  However, the Original Complaint states only that "Mr. Tabor assigned the Son Mortgage to the Trust".  That allegation was not sufficient to notify Mrs. Tabor of impending claims relating to any "equitable interest" she might have in the trust.  To the contrary, one may more readily interpret the allegations in the Original Complaint to suggest that Mr. Tabor somehow transferred the right to collect on the loan made to the Debtors' son without Mrs. Tabor's assistance and potentially to her detriment.

various assets from the Trustee after the filing of the bankruptcy petition.  The alleged assets include the above-mentioned Porsche, as well as "equitable interests" in the loan repayment proceeds, the Trust, the Tabor Agency, and the commission from the sale of real property owned by the Trust.  The Debtors argue that the "equitable interest" theory and certain related facts do not relate back to the Original Complaint.

This count is similar to Count I of the Amended Complaint in all respects except that, pursuant to the relevant statute, the Plaintiffs allege that Mr. Tabor concealed his equitable interest from the Trustee after filing his bankruptcy petition.  This distinction is not material to the analysis conducted above with respect to amended Count I.  Accordingly, the Court will grant the Motion to the extent that the Plaintiffs may file an amended complaint containing amended Count III.

**Count IV**

In Count IV of the Amended Complaint, the Plaintiffs request denial of Mrs. Tabor's discharge pursuant to section 727(a)(2)(B).  The Plaintiffs allege that Mrs. Tabor concealed various assets from the Trustee after the filing of the bankruptcy petition.  The alleged assets are the Trust and the loan repayment proceeds.  For the reasons stated above with respect to amended Count II, this request is time-barred.  Accordingly, the Motion will be denied in part; the amended complaint may not include the amended Count IV.

**Count V**

In Count V of the Amended Complaint, the Plaintiffs request denial of both Debtors' discharges pursuant to section 727(a)(3).  The Plaintiffs allege that the Debtors failed to maintain records of some $850,000 in jewelry and household furnishings that have now disappeared.  This count is substantially similar to Count IV of the Original Complaint in all factual and legal respects.  Accordingly, the Court will grant the Motion to the extent

12

that the Plaintiffs will be permitted to file an amended complaint containing the amended Count V.

### Count VI

In Count VI of the Amended Complaint, the Plaintiffs request denial of both Debtors' discharges pursuant to section 727(a)(4)(A).  The Plaintiffs allege that the Debtors made false statements concerning their income and assets.  The relief requested in this count is similar to that requested in Counts V, VI, VII, and VIII of the Original Complaint, and effectively functions as a composite thereof.  However, Count VI of the Amended Complaint contains allegations of false statements relating to the Debtors' alleged equitable interests in the loan repayment proceeds, the Trust, the Tabor Agency, and transactions relating thereto.  The Court's analysis of this additional factual basis for Count VI is the same as that stated above with respect to amended Count I to the extent amended Count VI applies to Mr. Tabor.  But, as discussed above in connection with amended Count II, Mrs. Tabor was not placed on notice of potential claims related to any equitable interest in those entities and assets.  Accordingly, the Court will grant the Motion to the extent that the Plaintiffs will be permitted to file an amended complaint containing the amended Count VI, except that the allegations in the amended Count VI regarding alleged false statements concerning equitable interests in the loan repayment proceeds, the Trust, the Tabor Agency, and transactions relating thereto, shall not apply to Mrs. Tabor.

### Count VII

In Count VII of the Amended Complaint, the Plaintiffs request denial of Mr. Tabor's discharge pursuant to section 727(a)(4)(C).[6]  Under subsection (a)(4)(C), a debtor may be

---

[6] The title of count VII indicates that the request is for denial of both Debtors' discharges.  However, the body of the count contains an allegation that only Mr. Tabor acted "knowingly and fraudulently" and contains a request for "a judgment denying the Mr. Tabor's discharge" [sic].  There is no

denied discharge if he or she "knowingly and fraudulently, in or in connection with the case…received, or attempted to obtain…advantage…for acting or forbearing to act".  In support of their claim, the Plaintiffs allege that Mr. Tabor knowingly and fraudulently obtained a personal advantage through the PMP settlement with Mercantil Bank, in the form of a release of his personal liability, during the pendency of this bankruptcy case, partly in exchange for causing PMP to release its potentially valuable counterclaims against Mercantil Bank.  This was allegedly detrimental to his bankruptcy estate because if PMP was successful on its counterclaims there could have been a substantial distribution payable to Mr. Tabor and thus to the Trustee.

The transaction alleged in Count VII occurred on November 20, 2015, some two months after the Plaintiffs filed their Original Complaint and, importantly, two months after the deadline for the Plaintiffs to challenge the Debtors' discharge.  The Plaintiffs argue that the count is nonetheless timely pursuant to Fed. R. Civ. P. 15(d) as incorporated by Fed. R. Bankr. P. 7015, as well as pursuant to Fed. R. Bankr. P. 4004(b)(2).

In their response, the Debtors note that the Plaintiffs knew of PMP's litigation with Mercantil Bank long before they filed the Original Complaint.  The Debtors argue that Rule 15(d) does not apply because the Plaintiffs had effective notice of the conduct later formalized in the settlement before they filed the Original Complaint.  Simple logic negates this argument.  The Plaintiffs allege that on November 20, 2015 Mr. Tabor caused PMP to agree with Mercantil Bank upon terms that personally benefitted the Debtors.  There simply was no potential claim under Section 727(a)(4)(C) until that date.  Count VII could not have been pursued prior to the original discharge deadline.

---

allegation that Mrs. Tabor owns any portion of PMP or caused it to take any action.  Under the circumstances, the Court interprets Count VII as a request solely for denial of Mr. Tabor's discharge.

The Debtors argue that the only procedure available to extend the discharge deadline is contained in Rule 4004(b)(2), and that the Plaintiffs must request relief under that provision in order to amend their complaint to include this count.

The case law is not uniform with regard to whether Rule 15(d) may be used to extend the discharge deadline.  Some courts hold that Rule 4004 should be strictly construed so as to prohibit Rule 15(d) as an exception to the deadline, and others that Rule 15 allows for amendment of complaints after expiration of the deadline.  *See Zedan v. Habash*, 529 F.3d 398, 404-05 (7th Cir. 2008) (discussing case law and finding amended complaint properly dismissed for failure to state claim); *In re Krank*, 84 B.R. 372, 376-77 (Bankr. E.D. Pa. 1988) (analyzing case law and allowing amendment of complaint 17 months after expiration of deadline).  But the Court need not analyze this apparent conflict between the two rules of procedure, because the Motion should be granted on its merits even under Rule 4004(b)(2).

Rule 4004(b)(2) provides the following:

> A motion to extend the time to object to discharge may be filed after the time for objection has expired and before discharge is granted if (A) the objection is based on facts that, if learned after the discharge, would provide a basis for revocation under § 727(d) of the Code, and (B) the movant did not have knowledge of those facts in time to permit an objection. The motion shall be filed promptly after the movant discovers the facts on which the objection is based.

Section 727(d) of the Bankruptcy Code provides, among other things, for revocation of discharge where it is shown that the discharge was obtained through fraud and the plaintiff was not aware of the fraud until after the entry of discharge.

Thus, under Rule 4004(b)(2) as relevant to this Motion, the Plaintiffs must show that the Amended Complaint pleads that Mr. Tabor committed an act of fraud that would provide a basis for revocation of discharge under Section 727(d), that the Plaintiffs did not know of the act in time to permit an objection to discharge prior to the expiration of the

15

Rule 4004(a) deadline, and that the Plaintiffs filed the Motion promptly upon discovering the facts on which the objection is based.

All three components are satisfied here.  It is alleged that Mr. Tabor believed that PMP had a substantial claim against Mercantil Bank, a claim that if collected would have resulted in his interest in PMP having significant value, a value that the Trustee could have pursued for the bankruptcy estate, but that he knowingly and secretly caused PMP to release that claim so that he could obtain the benefit of a release from Mercantil Bank. These are facts that, if learned after entry of discharge, would constitute fraud that would support revocation of discharge under section 727(d).  It is obvious that the Plaintiffs did not know of the alleged act in time to permit an objection to discharge before the deadline because the act itself, the settlement with Mercantile Bank, did not occur until two months after that deadline.  The Plaintiffs filed the Motion some four months after discovery of the act, during which time the Plaintiffs conducted discovery and attempted to negotiate with the Debtors.  The Court thus finds that the Plaintiffs filed the Motion with reasonable promptness upon discovering the underlying facts.

Nor is the Court persuaded by the Debtors' arguments that the Plaintiffs must file a separate motion specifically referencing Rule 4004(b)(2) and requesting an extension of the Rule 4004(a) deadline.  This would only result in delay and cost to the bankruptcy estate while providing nothing that is not already present in the documents before the Court.

Finally, the Debtors argue that the addition of Count VII would be futile because the Plaintiffs have failed to allege facts that satisfy section 727(a)(4)(C) as a threshold matter. The Debtors argue this is so because Mr. Tabor conducted the negotiation of the PMP settlement pursuant to his managerial role with the non-debtor entity PMP and not as the Debtor.  The Debtors argue that Mr. Tabor's conduct was not "in connection with the case" as required by section 727(a)(4)(C).  Yet, but for the settlement, Mercantil Bank would have

16

had a significant claim against Mr. Tabor in this case.  The settlement between PMP and
Mercantil Bank was "in connection with the case" because it resulted in complete release of
a significant claim otherwise presentable in this case.  The Plaintiffs specifically allege that
Mr. Tabor acted knowingly and fraudulently and for his personal benefit, not pursuant to
any managerial obligation.  The allegations satisfy the prima facie elements of a claim
under section 727(a)(4)(C).  The addition of amended Count VII is not futile.

Accordingly, the Court will grant the Motion to the extent that the Plaintiffs may
file an amended complaint containing the amended Count VII.

**Count VIII**

In Count VIII of the Amended Complaint, the Plaintiffs request denial of both
Debtors' discharges pursuant to section 727(a)(5).  The Plaintiffs allege that the Debtors
failed to satisfactorily explain a loss of hundreds of thousands of dollars in furnishings.
This count relies on facts and arguments related to those presented in Count IV of the
Original Complaint, which allege the dispersal of certain personal property of the Debtors.
Amended Count VIII is distinct from that count in that, rather than requesting relief on the
basis of inadequate record keeping concerning certain assets, the Plaintiffs request relief
premised upon a failure to explain the loss of the assets.  The underlying conduct is the
same, and thus the amended count relates back to the facts alleged and relief requested in
the Original Complaint.  Accordingly, the Court will grant the Motion to the extent that the
Plaintiffs will be permitted to file an amended complaint containing the amended Count
VIII.

**Blanket Objections**

In their response to the Motion, the Debtors also raise blanket objections to the
requested relief.  First, the Debtors argue that the relief requested would unduly prejudice
the Debtors because it would require substantial additional discovery and dramatically

17

increase costs. Even if this, alone, would be reason to deny a proper amendment to a complaint, under the circumstances of this case the Debtors were on notice of the claims presented in the Amended Complaint that will be permitted as a result of this order because those claims arise from the same central core of facts presented in the Original Complaint. This objection is simply not applicable to Count VII of the Amended Complaint, which arose from Mr. Tabor's own actions after the discharge deadline.

Second, the Debtors argue that the Motion is brought in a bad faith effort to increase costs, forestall litigation, and avoid disposition of the Debtors' motion for summary judgment on the Original Complaint. The Debtors describe a "pattern of over litigious practice in this case…[a] Homeric effort to deny these senior citizens a bankruptcy discharge." Having reviewed the entire record of this bankruptcy case and this adversary proceeding, the Court does not find any of the Plaintiffs' condut to be inappropriate. Mr. Tabor is a sophisticated business person. While continuing to conduct business and represent himself as an experienced corporate executive, and despite substantial evidence suggesting he has hidden assets from his creditors, Mr. Tabor seeks to discharge many millions of dollars in debts. Some evidence suggests that Mrs. Tabor may be complicit in the same alleged pattern of conduct. It is not surprising or uncommon that in such circumstances the Trustee and the Debtors' creditors would investigate thoroughly, prosecute the Debtors based on the information obtained, and seek to amend their allegations upon discovery of new information. The Court finds no bad faith in the filing of the Motion.

**Conclusion**

For the reasons stated above, and being otherwise fully advised in the premises, it is ORDERED AND ADJUDGED that:

1.    The Motion [ECF No. 155] is GRANTED IN PART as provided herein.

18

2.      No later than July 8, 2016, the Plaintiffs may file an amended complaint

consistent with the Court's ruling above.

3.      The Summary Judgment Motion [ECF No. 128] is DENIED as moot.

###

Copies furnished to:

Kenneth Robinson, Esq.

*Kenneth Robinson, Esq. is directed to serve a conformed copy of this order on all appropriate parties and file a certificate of service with the Court.*